## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## GREENBELT DIVISION

| | | |
|---|---|---|
| **DANA M. MERCHANT** | * | |
| **7694 Dorchester Blvd., #903** | | |
| **Hanover, MD 21076** | * | |
| | | |
| *Plaintiff,* | * | |
| | | |
| **v.** | * | Civil Action: 8:17-cv-2146 |
| | | |
| **DEPARTMENT STORES NATIONAL** | * | |
| **BANK, a subsidiary of Citibank,** | | |
| **N.A.** | * | |
| **701 E 60th St. N** | | |
| **Sioux Falls, SD 57104** | * | |
| | | |
| **Serve on:** | * | |
| | | |
| **Citibank, N.A., %** | * | |
| **The Corporation Trust, Inc.** | | |
| **2405 York Road, Ste. 201** | * | |
| **Timonium, MD 21093-2264** | | |
| *Defendants.* | * | |
| | | |
| **and** | * | |
| | | |
| **EQUIFAX INFORMATION** | * | |
| **SERVICES LLC** | | |
| **1550 Peachtree Street, NW** | * | |
| **Atlanta, GA 30309** | | |
| | * | |
| **Serve on:** | | |
| | * | |
| **CSC-Lawyers Incorporating** | | |
| **Service Company** | * | |
| **7 St. Paul St., Ste. 1660** | | |
| **Baltimore, MD 21202** | * | |
| | | |
| **and** | * | |
| | | |
| **EXPERIAN INFORMATION** | * | |
| **SOLUTIONS, INC.** | | |
| **505 City Pkwy West** | * | |
| **Orange, CA 92668** | | |

|  | * |
|---|---|
| **Serve on:** | |
|  | * |
| **The Corporation Trust** | |
| **Incorporated** | * |
| **351 West Camden St.** | |
| **Baltimore, MD 21201** | * |
|  | |
| ***Defendants*** | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES the Plaintiff, Dana M. Merchant, (hereafter the "Plaintiff") by counsel, and for her complaint against the Defendants, alleges as follows:

## PRELIMINARY STATEMENT

1.     The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual American citizens. Data technology, whether it is used by businesses, banks, the Internal Revenue Service or other institutions, allows information concerning individual consumers to flow instantaneously to requesting parties. Such timely information is intended to lead to faster and better decision-making by its recipients, and all of society should ultimately benefit from the resulting convenience and efficiency.

2.     Unfortunately, however, this information has also become readily available for, and subject to, mishandling and misuse. Individual consumers can sustain substantial harm, both emotionally and economically, whenever inaccurate or fraudulent information is disseminated and/or obtained about them.

3.     The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit

histories and other personal information. Such companies are commonly known as consumer reporting agencies ("CRAs").

4.     These CRAs sell to readily paying subscribers (i.e., retailers, landlords, lenders, potential employers and similar interested parties) information, commonly called "consumer reports," concerning individuals who may be applying for retail credit, for the lease of an apartment, for a car or mortgage loan, for employment or the like.

5.     Since 1970, when Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), federal law has required CRAs to implement and utilize reasonable procedures "to assure maximum possible accuracy" of the personal, private and financial information that they compile and sell about individual consumers.

6.     Requiring CRAs to assure the "maximum possible accuracy" of consumer information is crucial to the stability of our banking system, to wit:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

7.     The preservation of one's good name is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage to buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. * * * [A]s Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed (emphasis added).

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 Cong. Rec. 36570 (1970)].

8.      To further the primary goal of greater accuracy, the FCRA also requires CRAs, as well as "furnishers" of credit information to the CRAs, among many other duties, to conduct "reasonable investigations" into disputes lodged to CRAs by consumers claiming to have inaccurate or incomplete information appearing in their credit reports, to correct or update any such errors or omissions, and to report back to the consumers the results of their investigations.

9.      This action seeks compensatory, statutory, and punitive damages, costs and reasonable attorneys' fees for Plaintiff Dana M. Merchant against Department Stores National Bank; Equifax Information Services LLC; and Experian Information Solutions, Inc. for violation of common law and for their willful and/or negligent violations of the Fair Credit Reporting Act, as described herein and asserts an additional claim against Department Stores National Bank under common law.

## JURISDICTION

10.      The jurisdiction of this Court is conferred by 15 U.S.C. § 1681(p) and 28 U.S.C. 1367.

## PARTIES

11.      The Plaintiff is a natural person and resident of the State of Maryland. She is a "consumer" as defined by 15 U.S.C. § 1681a(c).

12.      Upon information and belief, Department Stores National Bank is a subsidiary of Citibank, N.A., (hereafter "DSNB") and issues and administers the Macy's American Express Card program. American Express is a federally registered service mark of American Express and is used by DSNB pursuant to a license.

13.      Upon information and belief, Equifax Information Services LLC

(hereafter"Equifax") is a corporation incorporated under the laws of the State of Georgia and is authorized to do business in the State of Maryland.

14.     Upon information and belief, Experian Information Solutions, Inc. (hereafter "Experian") is a corporation incorporated under the laws of the State of Delaware and is authorized to do business in the State of Maryland.

15.     Upon information and belief, Equifax and Experian are each a "consumer reporting agency," as defined in 15 U.S.C. § 1681(f). Upon information and belief, Equifax, and Experian are regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681(d) to third parties.

16.     Upon information and belief, Equifax and Experian disburse such consumer reports to third parties under contract for monetary compensation.

## FACTUAL ALLEGATIONS

17.     Credit-reporting agencies collect information from furnishers like DSNB — creditors, governmental entities, collection agencies, and third-party intermediaries. They generally collect data every month, and they typically update their credit records within one to seven days after receiving new information. To facilitate the collection process and to reduce reporting costs, the CRAs have implemented procedures to have data submitted in a standard format, the so-called Metro format. Data may be submitted through various media, including CD-ROM and electronic data transfer. Furnishers like DSNB submit information voluntarily. No state or federal law requires them to report data to the CRAs or to use a particular format for their reporting. As a result, the completeness and frequency of reporting by furnishers can vary.

18.     A credit score is a number that summarizes credit risk, based on a snapshot of a consumer's credit report at a particular point in time. Credit bureau based scores have been available since 1989 when Fair Isaac and Company, installed its first "FICO" score at Equifax. Credit scores summarize the information on a consumer's credit report. The score is predictive of credit risk and is used by lenders and insurance companies. FICO scores, which are the industry standard, are calculated from different credit data variable groups.

19.     Every day thousands of consumer disputes are received and processed by the National CRAs: Equifax, TransUnion and Experian. These disputes are received via phone, mail or online through the Internet. Each credit-reporting agency is obligated by the FCRA to investigate the disputed items at the source of the data, which is normally the creditor that furnished the data.

20.     The bureaus and the data furnishers are obligated under the FCRA to ensure that they have reasonable procedures in place to ensure maximum possible accuracy of the credit file data.

21.     When a consumer contacts the credit bureaus, the bureau will typically send an Automated Consumer Dispute Verification form (hereafter "ACDV") electronically through a system called e-OSCAR, to the data furnisher for verification of the item in question.

22.     The e-OSCAR system was developed by Equifax, Experian, Innovis and TransUnion and purports to be an "Online Solution for Complete and Accurate Reporting."

23.     Upon receiving the ACDV through e-OSCAR, the furnisher is required to conduct its own investigation and send a response back to the CRAs. The dispute can be verified as reported, changed/updated or deleted.

24.     The results of the investigation are then updated on the credit report by the CRAs

and either mailed or emailed back to the consumer. This process can take up to 30-45 days to complete but it typically takes less than 30.

25.     Either because of time, cost, or volume of disputes, the CRAs have adopted an investigation procedure that involves condensing a consumer's dispute to a 2 to 3 digit code that is sent electronically to the data furnisher. Sometimes, the CRAs also provide images of the actual dispute letter sent by the consumer to the CRAs.

26.     Unfortunately, the data furnisher almost always performs its investigation based only on this 2 or 3 digit code and quickly verifies its previous data to the CRAs without performing any real investigation. In fact, these investigations are often conducted in under three minutes by low level back office employees who are often compensated based upon the number of disputes they can process per day.

27.     The CRAs then rely solely on the results of the data furnisher's investigation without performing any independent investigation.

28.     This investigation method is known as "parroting" and no independent analysis, evaluation or reasonable investigation is ever performed by the Credit Reporting Agencies.

29.     DSNB is a "furnisher" and regularly furnishes information about consumers, including the Plaintiff, the credit reporting agencies including, Equifax, Experian, TransUnion and Innovis.

30.     Within two years prior to the filing of this lawsuit Plaintiff requested and received a copy of the credit file of the Plaintiff compiled and maintained by Equifax, Experian and Trans Union.

31.     Within each credit report, Equifax, Experian and Trans Union reported two inaccuracies from data furnished by DSNB. The inaccuracies appeared in an Equifax report

prepared on May 12, 2017; an Experian report prepared on May 16, 2017; and a TransUnion report prepared on May 17, 2017.

32.     The first inaccuracy was that Plaintiff was 90 days past due on January 2016, with respect to a Macy's American Express account identified as number 3774xxxx and that the account had a high balance of $2,815.00. This information was inaccurate because the Plaintiff has never had a balance of $2,815.00 or been 90 days late on any payment.

33.     The DSNB representation was false because the credit card for this account was compromised and fraudulent charges totaling $290.00 appeared on the Plaintiff's billing statement during August of 2015.

34.     The Plaintiff disputed these charges directly with DSNB, did not pay them, and discontinued use of the credit card.

35.     The fraudulent charges accrued interest and fees until February 2016 when DSNB credited the Plaintiff's account for the fraudulent charges and fees.

36.     Following the removal of the charges, DSNB mailed the Plaintiff a letter dated May 24, 2016, that stated:

May 24, 2016

Dear DANA M MERCHANT,

**Why we're writing you**
We are writing to inform you that we completed the investigation on your Macy's American Express® Card account.  As a result, we removed the disputed charges and any related fees and interest charges from your account.

**Here's what you should know**
We updated your dispute to a resolved status with the consumer reporting agencies listed below and the agencies were informed to update your credit report.  Please allow them at least 60 days to revise their records.

| Equifax Credit Information Service | Experian | TransUnion LLC |
|---|---|---|
| P.O. Box 740241 | P.O. Box 2002 | Consumer Relations Center |
| Atlanta, GA 30374-0241 | Allen, TX 75013-0036 | P.O. Box 1000 |
| 1-800-685-1111 | 1-888 EXPERIAN (1-888-397-3742) | Chester, PA 19022 |
| www.equifax.com | www.experian.com | 1-800-888-4213 |
| | | www.transunion.com |

37.    The second inaccuracy was that a Macy's account identified as number 6035xxxx had a high balance of $731.00. This information was inaccurate because the Plaintiff never had a balance of $731.00 on any account associated with DSNB and Macy's.

38.    The two inaccuracies identified above are referred to hereafter as the "DSNB misrepresentations."

39.    On May 31, 2017, Plaintiff contacted DSNB disputing the DSNB representations described above.

40.    On May 31, 2017, Plaintiff contacted Equifax, Experian and Trans Union disputing the DSNB representation and provided a copy of the May 24, 2016, communication received from DSNB.

41.    Trans Union deleted the DSNB representations.

42.    Equifax responded to the dispute on June 21, 2016, but continued to report that Plaintiff was 90 days past due on January 2016, with respect to a Macy's American Express account identified as number 3774xxxx. Equifax also failed to correct its inaccurate reporting about the high credit balance of $731.00 relating to account 6035xxxx.

43.    Experian responded to the dispute on June 14, 2017, but continued to report that Plaintiff was 90 days past due on January 2016, with respect to a Macy's American Express account identified as number 3774xxxx. Experian also failed to correct its inaccurate reporting about the high credit balance of $731.00 relating to account 6035xxxx.

44.    Upon the Plaintiff's request for verification and deletion, and in accordance with its standard procedures, Equifax and Experian did not evaluate or consider any of Plaintiff's information, claims or evidence and did not make any attempt to substantially or reasonably verify the DSNB representations.

45.     In the alternative to the allegation that Equifax and Experian failed to contact DSNB, it is alleged that Equifax and Experian did forward some notice of the dispute to DSNB and DSNB failed to conduct a lawful investigation.

46.     The DSNB representations are damaging and derogatory items on the Plaintiff's credit report.

## COUNT I
## VIOLATION OF 15 U.S.C. § 1681e(b) BY EQUIFAX and EXPERIAN

47.     The Plaintiff realleges and incorporates paragraphs 1 through 46 above as if fully set out herein.

48.     A "consumer reporting agency" is defined by the FCRA as follows:

> any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

*See* 15 U.S.C. § 1681a(f).

49.     Equifax and Experian are each a consumer reporting agency as defined by Section 1681a(f) of the FCRA.

50.     Section 1681n of the FCRA imposes civil liability on any CRA "who willfully fails to comply with any requirement" of the Act. *See* 15 U.S.C. § 1681n(a). Any person who willfully fails to comply with any requirement of the FCRA is liable to the consumer for actual damages, statutory damages, punitive damages, costs of the action, and reasonable attorneys' fees. *Id.* at § 1681n(a)(l)-(3).

51.     Section 1681*o* of the FCRA provides for civil liability against any CRA which is negligent in failing to comply with any requirement imposed under the Act. *See* 15 U.S.C. §

1681o. Any person who negligently fails to comply with any requirement of the FCRA is liable to the consumer for actual damages, costs of the action, and reasonable attorneys' fees. *Id.* at § 1681o(a)(l)-(2).

52.     The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." *See* 15 U.S.C. § 1681e(b).

53.     When Equifax and Experian receive a dispute from a consumer, their "investigation" procedure involves little more than condensing the consumer's dispute to a two-digit code that gets transmitted electronically to the furnisher of the disputed information for comparison with the furnisher's own information.

54.     Upon information and belief, Equifax and Experian do no independent or further "investigation" of the substance of the consumer's dispute.

55.     This method of investigation is known as "parroting" of information, and has been rejected routinely by courts throughout the country.

56.     Making matters worse, Equifax and Experian have a policy and/or procedure not to investigate a dispute lodged by a consumer if the subject of the dispute has been "investigated" by them previously. In other words, upon receipt of a consumer's dispute, Equifax and Experian's first step is to check whether the subject of the dispute has previously been "investigated," *i.e.*, whether a two-digit code has previously been sent to the furnisher of the information to check whether the data matches. If it has, Equifax and Experian refuse to do any sort of investigation into the consumer's dispute whatsoever.

57.     Upon information and belief, a procedure aimed at the expeditious elimination of

work for Equifax and Experian instead of the accuracy of the underlying information is patently unreasonable.

58.     Moreover, the FCRA envisions the investigation process to involve both the CRA **and** the furnisher of the information. With two (2) separate entities involved, both of whom have distinct responsibilities to conduct a reasonable investigation, *see* 15 U.S.C. §1681i and § 1681s-2b, the consumer has greater protection that inaccurate information will be corrected as quickly as possible.

59.     Because of the repeat dispute procedure, the consumer loses that protection. Equifax and Experian unilaterally determine that the furnisher of the disputed information will not even be contacted to conduct its own investigation.

60.     While the FCRA allows a consumer to pursue a cause of action against a furnisher who fails to conduct a reasonable investigation of a consumer's dispute, the furnisher **must** receive notification from the CRA, not the consumer, as a pre-requisite to the cause of action. *See* 15 U.S.C. § 1681s-2b.

61.     As described above, Equifax and Experian willfully and/or negligently failed to follow reasonable procedures to assure maximum possible accuracy of the information they circulated about Plaintiff.

62.     As a direct and proximate result of the failures of Equifax and Experian, Plaintiff has suffered economic and non-economic loss in specific amounts to be proved at trial.

63.     As a direct and proximate result of the failures Equifax and Experian, Plaintiff has suffered a significant loss of trust in the credit reporting system and its accountability to the average consumer such as themselves.

64.     As a direct and proximate result of the willful and/or negligent refusal of Equifax

and Experian to adopt and/or follow reasonable procedures as mandated by the FCRA, Plaintiff has suffered loss and damage including, but not limited to, financial loss, lost credit opportunity, expenditure of time and resources, risk to security clearance and mental anguish, entitling her to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

65.     The continued refusal of Equifax and Experian to adopt and/or follow reasonable procedures as mandated by the FCRA reveals a conscious disregard of the rights of the Plaintiff. The injuries suffered by the Plaintiff are attended by circumstances of fraud, malice, and willful and wanton misconduct entitling the Plaintiff to statutory damages, punitive damages, attorneys' fees and costs pursuant 15 U.S.C. § 1681n(a)(2).

66.     Equifax and Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning the Plaintiff.

## COUNT II
## VIOLATION OF 15 U.S.C. § 1681i EQUIFAX and EXPERIAN

67.     Plaintiff realleges and incorporates paragraphs 1 through 66 above as if fully set out herein.

68.     The FCRA mandates that a CRA conduct an investigation of the accuracy of information "[i]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. *See* 15 U.S.C. § 1681i(a)(1). The Act imposes a 30-day time limitation for the completing of such an investigation. *Id.*

69.     The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is, in fact, inaccurate, or is unable to verify the accuracy of the disputed information, the consumer reporting agency is required to delete that

item of information from the consumer's file. *See* 15 U.S.C. § 1681i(a)(5)(A).

70.     The FCRA allows a CRA to terminate an investigation "if the agency reasonably determines that the dispute by the consumer is frivolous or irrelevant, including by reason of a failure by a consumer to provide sufficient information to investigate the disputed information." *See* 15 U.S.C. § 1681i(a)(3)(A). However, the FCRA mandates that "[u]pon making any determination in accordance with subparagraph (A) that a dispute is frivolous or irrelevant, a consumer reporting agency shall notify the consumer of such determination not later than 5 business days after making such determination." *See* 15 U.S.C. § 1681i(a)(3)(B).

71.     Equifax and Experian violated 15 U.S.C. § 1681i by failing to delete inaccurate information in the Plaintiff's credit file after receiving actual notice of such inaccuracies; by failing to conduct a lawful reinvestigation; by failing to forward all relevant information to DSNB by failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file; and by relying upon verification from a source it has reason to know is unreliable.

72.     Equifax and Experian willfully and/negligently failed to conduct ***any*** investigation, let alone a reasonable investigation, of Plaintiff's dispute in violation of 15 U.S.C. § 1681i(a)(1).

73.     Upon information and belief, at no point in its review of Plaintiff's dispute did Equifax and Experian make a determination that the dispute was frivolous or irrelevant.

74.     Equifax and Experian certainly did not advise the Plaintiff that Plaintiff's dispute had been determined to be frivolous or irrelevant as expressly required by 15 U.S.C. § 1681i(a)(3)(B).

75.     As a direct and proximate result of the refusal to conduct a reasonable

investigation by Equifax and Experian, Plaintiff has suffered economic and noneconomic loss.

76.     As a direct and proximate result of the refusal of Equifax and Experian, Plaintiff has suffered considerable mental, emotional and physical stress and distress.

77.     As a direct and proximate result of the disregard by Equifax and Experian for Plaintiff's disputes and the importance of the Plaintiff's good name and credit rating, Plaintiff has suffered a significant loss of trust in the credit reporting system and its accountability to the average consumer such as themselves.

78.     As a direct and proximate result of the willful and/or negligent refusal by Equifax and Experian to conduct a reasonable investigation as mandated by the FCRA and as outlined above, Plaintiff has suffered other loss and damage including, but not limited to, financial loss, expenditure of time and resources, mental anguish, humiliation, embarrassment and emotional distress, entitling her to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

79.     The continued refusal by Equifax and Experian to adopt and/or follow reasonable procedures as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff. The injuries suffered by the Plaintiff is attended by circumstances of fraud, malice, and willful and wanton misconduct entitling Plaintiff to statutory damages, punitive damages, attorneys' fees and costs pursuant 15 U.S.C. § 1681n(a)(2).

## COUNT III
## DEFAMATION BY DEPARTMENT STORES NATIONAL BANK

80.     Plaintiff realleges and incorporates paragraphs 1 through 79 above as if fully set out herein.

81.     In a letter dated May 24, 2016, DSNB acknowledged that fraudulent charges had appeared on the Plaintiff's account number 3774xxxx and promised that the Plaintiff was not

responsible for the charges and any related fees and interest and that updates had been provided to Equifax and Experian:



May 24, 2016

Dear DANA M MERCHANT,

**Why we're writing you**
We are writing to inform you that we completed the investigation on your Macy's American Express® Card account.  As a result, we removed the disputed charges and any related fees and interest charges from your account.

**Here's what you should know**
We updated your dispute to a resolved status with the consumer reporting agencies listed below and the agencies were informed to update your credit report.  Please allow them at least 60 days to revise their records.

| | | |
|---|---|---|
| Equifax Credit Information Service | Experian | TransUnion LLC |
| P.O. Box 740241 | P.O. Box 2002 | Consumer Relations Center |
| Atlanta, GA 30374-0241 | Allen, TX 75013-0036 | P.O. Box 1000 |
| 1-800-685-1111 | 1-888 EXPERIAN (1-888-397-3742) | Chester, PA 19022 |
| www.equifax.com | www.experian.com | 1-800-888-4213 |
| | | www.transunion.com |

82.     The May 24, 2016, communication was attached to the dispute letters the Plaintiff sent to Equifax, Experian and TransUnion and they each forwarded it to DSNB as an attachment to the ACDVs that were sent to DSNB as part of their investigation of the DSNB representation.

83.     Thus, DSNB had actual knowledge that the DSNB representation about account number 3774xxxx was false and should be corrected to show that the account was not 90 days past due.

84.     Notwithstanding this actual knowledge, DSNB falsely represented to Equifax, Experian and TransUnion that the DSNB representation about account number 3774xxxx was true when it was in fact false.

85.     Within one year of the filing of this Complaint DSNB published false information claiming that Plaintiff was 90 days past due on January 2016, with respect to a Macy's American Express account identified as number 3774xxxx.

86.     The Defamation was willful and with malice. DSNB had actual knowledge that the Plaintiff was not legally responsible to pay any amount for the account reported in the DSNB representation about account number 3774xxxx because it knew that the charges were fraudulent and that it had removed the charges and any related fees and interest charges from the Plaintiff's account. Alternatively, DSNB did not have any reasonable basis to believe that the Plaintiff was 90 days late in paying the account for charges that she did not owe and acted with a high degree of awareness of the probable falsity or had serious doubts about the veracity of the information it was reporting to Equifax, Experian, and Trans Union.

87.     DSNB also had substantial evidence by which to have verified that the DSNB representation about account number 3774xxxx was not accurate. DSNB willfully determined to follow procedures which did not review, confirm or verify the document that was sent by the Plaintiff and attached to the ACDVs sent to DSNB. Specifically, no one from DSNB ever reviewed the document attached to the ACDV or recognized that the document proved that the Plaintiff could not be 90 days late because DSNB agreed that she did not owe the charges.

88.     As a result of this conduct, action and inaction of DSNB, Plaintiff has suffered loss and damage including, but not limited to, financial loss, expenditure of time and resources, mental anguish, humiliation, embarrassment and emotional distress, entitling her to an award of actual damages in amounts to be proved at trial.

89.     The defamation, conduct and actions of DSNB were willful, deliberate, intentional and/or with reckless disregard for the interests and rights of Plaintiff such as to justify an award of punitive damages against DSNB in an amount to be determined by the Court.

## COUNT IV
## VIOLATION OF 15 U.S.C. § 1681s-2(b) BY
## DEPARTMENT STORES NATIONAL BANK

90.     Plaintiff realleges and incorporates paragraphs 1 through 89 above as if fully set out herein.

91.     DSNB violated the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b) by continuing to report the DSNB representation within Plaintiff's credit file with Equifax, Experian, and Trans Union by omitting information that it could not prove that the information being reported was accurate thereby rendering the reported information misleading; by failing to fully and properly investigate the Plaintiff's dispute of the DSNB representations described above; by failing to review all relevant information regarding same; by failing to accurately respond to Equifax, Experian, and Trans Union; and by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the DSNB representations to the consumer reporting agencies.

92.     As a result of this conduct, action and inaction of DSNB, Plaintiff has suffered loss and damage including, but not limited to, financial loss, expenditure of time and resources, mental anguish, humiliation, embarrassment and emotional distress, entitling her to an award of actual damages in amounts to be proved at trial.

93.     DSNB's conduct, action and inaction was willful, rendering it liable for actual or statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

94.     The Plaintiff is entitled to recover costs and attorney's fees from DSNB in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

WHEREFORE, Plaintiff, Dana M. Merchant, respectfully prays for a judgment against Defendants as follows:

      a.     Actual damages sustained in an amount in excess of $75,000.00 and statutory damages of not less than $100 and not more than $1,000 for violations of the FCRA;

      b.     Such amount of punitive damages as the Court may allow for violations of the FCRA;

      c.     The costs of the action together with reasonably attorney's fees as determined by the Court;

      d.     Such other and further relief as may be just and proper.

## JURY TRIAL DEMAND

Dana M. Merchant hereby demands a trial by jury on all issues in this action, except for any issues relating to the amount of statutory damages, punitive damages, attorney's fees and litigation costs.

Dated: July 31, 2017           Respectfully Submitted,

                    */s/ E. David Hoskins*
                    E. David Hoskins, Esq. , No. 06705
                    THE LAW OFFICES OF E. DAVID HOSKINS, LLC
                    16 East Lombard Street, Suite 400
                    Baltimore, Maryland 21202
                    (410) 662-6500 (Tel.)
                    davidhoskins@hoskinslaw.com

                    */s/ Steven B. Isbister*
                    Steven B. Isbister, Esq., No. 14123
                    THE LAW OFFICES OF E. DAVID HOSKINS, LLC
                    16 East Lombard Street, Suite 400
                    Baltimore, Maryland 21202
                    (410) 662-6500 (Tel.)
                    stevenisbister@hoskinslaw.com